AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT

for the

Central District of California

JOSEPH L. KRAMIS

_Petitioner_

v.

THE PEOPLE OF THE STATE OF CALIFORNIA

_Respondent_

_(name of warden or authorized person having custody of petitioner)_

FILED
CLERK, U.S. DISTRICT COURT

FEB 2 6 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

Case No.  CV14 - 1467 MWF (JC)

_(Supplied by Clerk of Court)_

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1. (a) Your full name:  JOSEPH LAWRENCE KRAMIS

   (b) Other names you have used:

2. Place of confinement:

   (a) Name of institution:  NOT CONFINED

   (b) Address:  P.O. BOX190695

   SAN FANCISCO, 94119-0695

   (c) Your identification number:  AI-9088

LODGED
CLERK, U.S. DISTRICT COURT

FEB 2 4 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

3. Are you currently being held on orders by:

   ☐ Federal authorities        ☐ State authorities        ☑ Other - explain:

   NONE

4. Are you currently:

   ☐ A pretrial detainee (waiting for trial on criminal charges)

   ☐ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime

   If you are currently serving a sentence, provide:

   (a) Name and location of court that sentenced you:  SUPERIOR COURT OF LOS ANGELES

   CALIFORNIA. LONG BEACH

   (b) Docket number of criminal case:  NA082632

   (c) Date of sentencing:  09/27/2011

   ☐ Being held on an immigration charge

   ☑ Other _(explain)_:

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Decision or Action You Are Challenging

5.   What are you challenging in this petition?

☐ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

☐ Pretrial detention

☐ Immigration detention

☐ Detainer

☑ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

☐ Disciplinary proceedings

☐ Other *(explain)*: _____

_____

_____

6.   Provide more information about the decision or action you are challenging:

(a)  Name and location of the agency or court:   SUPERIOR COURT OF CALIFORNIA

LOS ANGELES COUNTY, LONG BEACH

(b)  Docket number, case number, or opinion number:   NA082632

(c)  Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*:

CONVICTION

_____

_____

(d)  Date of the decision or action:   08/05/2011

## Your Earlier Challenges of the Decision or Action

7.   **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☑ Yes            ☐ No

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court:   SUPERIOR COURT OF CALIFORNIA- LOS ANGELES

COUNTY- LONG BEACH

(2)  Date of filing:   02/06/2012

(3)  Docket number, case number, or opinion number:   NA082632

(4)  Result:   DENIED

(5)  Date of result:   10/12/2012

(6)  Issues raised:   1.STATE AND FEDERAL COSTITUTIONAL RIGHTS WERE VIOLATED

2.COURT COMMITTED REVERSIBLE ERRORS FAILING TO INSTRUCT JURY

3.TRIAL COURT ABUSED IT DECRECTION

_____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____

_____

_____

(b)  If you answered "No," explain why you did not appeal: _____

_____

8.    **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☑ Yes          ☐ No

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court:   SUPREME COURT OF THE STATE OF CALIFORNIA

SECOND APPELLATE DIST. DIV FIVE 300 S. SPRING ST 2ND FF NTH TOWER LOS ANGELES CA

(2)  Date of filing:   10/09/2012

(3)  Docket number, case number, or opinion number:   B236892

(4)  Result:   DENIED

(5)  Date of result:   12/12/2012

(6)  Issues raised:   1. STATE RIGHTS AND FEDERAL CONSTITUTIONAL RIGHTS WERE VIOLATED

WHEN THE TRIAL COURT EXCLUDED EVIDENCE GOING DIRECTLY TO THE CREDIBILITY

AND VERACITY OF NICOLE J.

2.COURT COMMITTED REVERSIBLE ERRORS FAILING TO INSTRUCT JURY

3.TRIAL COURT ABUSED IT DECRECTION

_____

(b)  If you answered "No," explain why you did not file a second appeal: _____

_____

_____

9.    **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes          ☑ No

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court: _____

_____

(2)  Date of filing: _____

(3)  Docket number, case number, or opinion number: _____

(4)  Result: _____

(5)  Date of result: _____

(6)  Issues raised: _____

_____

_____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____

_____

_____

_____

(b)  If you answered "No," explain why you did not file a third appeal:   I AM FILING NOW

_Timely  on  or  before  March  12,  2014_

10.   **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☑ Yes          ☐ No

If "Yes," answer the following:

(a)   *Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?*

☐ Yes          ☑ No

If "Yes," provide:

(1)  Name of court: _____

(2)  Case number: _____

(3)  Date of filing: _____

(4)  Result: _____

(5)  Date of result: _____

(6)  Issues raised: _____

_____

_____

_____

_____

_____

(b)   Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes          ☑ No

If "Yes," provide:

(1)  Name of court: _____

(2)  Case number: _____

(3)  Date of filing: _____

(4)  Result: _____

(5)  Date of result: _____

(6)  Issues raised: _____

_____

_____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

_____
_____
_____
_____

    (c)      Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence:

_____
_____
_____
_____
_____
_____
_____

11.    **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes        ☑ No

If "Yes," provide:

(a)      Date you were taken into immigration custody: _____

(b)      Date of the removal or reinstatement order: _____

(c)      Did you file an appeal with the Board of Immigration Appeals?

        ☐ Yes        ☑ No

        If "Yes," provide:

        (1) Date of filing: _____

        (2) Case number: _____

        (3) Result: _____

        (4) Date of result: _____

        (5) Issues raised: _____

_____
_____
_____
_____

(d)      Did you appeal the decision to the United States Court of Appeals?

        ☐ Yes        ☑ No

        If "Yes," provide:

        (1) Name of court: _____

        (2) Date of filing: _____

        (3) Case number: _____

AO 242 (12/11) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

    (4) Result: _____

    (5) Date of result: _____

    (6) Issues raised: _____

_____

_____

_____

_____

_____

_____

12.    **Other appeals**

    Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

    ☑Yes         ☐No

    If "Yes," provide:

    (a) Kind of petition, motion, or application:    INEFFECTIVE ASSITANCE OF COUNSEL

    (b) Name of the authority, agency, or court:    SUPERIOR COURT OF CALIFORNIA- LOS ANGELES LONG BEACH

    (c) Date of filing: _____

    (d) Docket number, case number, or opinion number:    NA082632

    (e) Result:    DENIED

    (f) Date of result:    N /A

    (g) Issues raised:    ATTORNEY BROKE HIS BACK DURING THE TRIAL.

PARALIZED, LAME, PLEADING WITH THE COURT ABOUT UNBEARABLE PAIN

UNABLE TO STAND AT LECTURE, LAID OUT IN HIS CHAIR DURING THE TRIAL

DRUGS, PROFESSIONAL MALPRACTICE

FAILURE TO CALL PRO-OFFERED WITNESSES / FAILURE TO PRODUCE EVIDENCE

NOT PRESENT DURING SENTENCING, DUE TO BACK INJURY AND SURGERY

MENTAL AND PHYSICAL ISSUES

GENERAL MISCONDUCT BECOMING A BAR CERTIFIED LAWYER.

## Grounds for Your Challenge in This Petition

13.    State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

    **GROUND ONE:**    ATTACHED (EXHIBIT "A")

_____

_____

_____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

_____
_____
_____
_____
_____
_____

(b)  Did you present Ground One in all appeals that were available to you?

☑ Yes          ☐ No

**GROUND TWO:** _____
_____
_____

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

_____
_____
_____
_____
_____
_____

(b)  Did you present Ground Two in all appeals that were available to you?

☐ Yes          ☐ No

**GROUND THREE:** _____
_____
_____

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

_____
_____
_____
_____
_____
_____

(b)  Did you present Ground Three in all appeals that were available to you?

☐ Yes          ☐ No

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:** _____

_____

_____

(a)  Supporting facts *(Be brief.  Do not cite cases or law.)*:

_____

_____

_____

_____

_____

_____

(b)  Did you present Ground Four in all appeals that were available to you?

☐ Yes          ☑ No

14.    If there are any grounds that you did not present in all appeals that were available to you, explain why you did

not:    ATTORNEY ROGER ROSEN WAS CONVICTED OF THREE FELONY COUNTS

FEDERAL OBSTRUCTION OF JUSTICE. UNCOVERED IN FURTER DISCOVERY.

NICOLE J. MOTIVE OF $2,000,000.00 USD. NOT AVAILABLE UNTIL NOW.

_____

**Request for Relief**

15.  State exactly what you want the court to do:    REVERSE CONVICTION

_____

_____

_____

_____

AO 242 (12/11)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.  I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date:        02/19/2014

_Signature of Petitioner_

_Signature of Attorney or other authorized person, if any_

Exhibit "A"

## I.

## APPELLANT'S STATE RIGHTS AND FEDERAL CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE TRIAL COURT EXCLUDED EVIDENCE GOING DIRECTLY TO THE CREDIBILITY AND VERACITY OF NICOLE J.

A. <u>Introduction.</u>

The testimony at trial indicated that appellant was a financially successful person. At various points during trial appellant sought to introduce evidence as to the poor state of Nicole's finances, to show a motive for fabricating her testimony. The offer of proof was that Nicole thought appellant was going to be her meal ticket. When appellant rejected her, Nicole retaliated. The court refused to allow the testimony, finding it irrelevant. (3RT pp. 417-420, 4RT pp. 607-608.)

Appellant also sought several times to introduce evidence of Nicole's alcoholism, as well as her tendency to get short and belligerent when she drank. The court also refused to allow this testimony, finding it irrelevant. (1RT p.7, 5RT pp. 692, 697.)

The court's ruling was an abuse of discretion. Appellant had the right to impeach Nicole with the evidence of her finances as well as her

11

reaction to alcohol, as they had an effect on her credibility and her veracity. In a case such as this where Nicole's credibility and veracity was the entire basis for the prosecution's case, and appellant presented neutral witnesses who offered uncontroverted evidence as to how Nicole suffered her injuries, the exclusion of evidence that would tend to support appellant's story and tend to show that Nicole had reason to fabricate her testimony was reversible error.

### B. The Standard of Review.

Under Evidence Code section 352, the trial court has broad discretion in assessing "whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time." (*People v. Rodrigues* (1994) 8 Cal.4th 1060.) The trial court's exercise of that discretion "must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Jordan* (1986) 42 Cal.3d 308, 316; see also *People v. Rodrigues, supra,* 8 Cal.4th at p. 1124.) .The record must show, however, that the court exercised its discretion. (*People v. Garrett* (1987) 195 Cal.App.3d 795, 801; *People v. Johnson* (1987) 193 Cal.App.3d 1570, 1577.) Exclusion of evidence that produces only speculative inferences is not an abuse of discretion. (*People v. Cornwell* (2005) 37 Cal.4th 50, 81, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

C. <u>The Trial Court Committed an Abuse of Discretion in Excluding Evidence As To Nicole's Finances and As to Her Use of Alcohol.</u>

Under Evidence Code section 352, the trial court has broad discretion in assessing "whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time." (*People v. Rodrigues, supra,* 8 Cal.4th 1060.) The trial court's exercise of that discretion "must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or *patently absurd manner that resulted in a manifest miscarriage of justice.* (*People v. Jordan* (1986) 42 Cal.3d 308, 316; see also *People v. Rodrigues, supra,* 8 Cal.4th at p. 1124.) The record must show, however, that the court exercised its discretion. (*People v. Garrett, supra,* 195 Cal.App.3d 795, 801; *People v. Johnson, supra,* 193 Cal.App.3d 1570, 1577.)

Evidence Code section 352 states the court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. Therefore, this analysis calls for answers to three questions. Was the evidence probative? Was the probative value of the evidence outweighed by its prejudicial effect? Was the probative value of the evidence outweighed by an undue consumption of time?

1. <u>The Evidence Was Probative.</u>

The probative effect of the proffered evidence was substantial. Over 100 years ago it was stated "It is always proper for a party against whom a witness has given damaging testimony to show out of the mouth of the witness himself, if he can, or by other sources, if necessary, that such witness has an unusual interest in the outcome of the case." (*People v. Sacramento Butchers' Protective Assn.* (1910) 12 Cal.App. 471, 494.)

Under section 780, subdivision (f), of the Evidence Code, evidence concerning the alleged existence of a witness' motive to fabricate testimony is admissible to attack his credibility. Evidence of such a motive may properly include specific acts and conduct of the witness. (See, e.g., *People v. Mascarenas* (1971) 21 Cal.App.3d 660, 98 Cal.Rptr. 728 [error not to admit evidence that key prosecution witness had made false charges against another and had stolen property].) A party can offer evidence, by proffered extrinsic evidence or by cross-examination of a witness, to attack the credibility of a witness, if such evidence tends reasonably to establish that the witness has a motive to fabricate, or some other motive, that tends to cause the giving of untruthful testimony, even though there may be no reasonable basis for the existence of such a motive. (See *People v. Lent* (1975) 15 Cal.3d 481, 484-485.)

In *Calvert v. State Bar* (1991) 54 Cal.3d 765, a disciplinary proceeding against an attorney for incompetent representation, the court

held that the referee had erroneously refused to allow the attorney to impeach the complaining client regarding the client's financial interest in the outcome of the proceeding. The client had a fee dispute with the attorney, and a pending malpractice action. "Generally, any fact or circumstance tending to show that a witness has a financial interest in the outcome of a legal proceeding is a proper ground for impeachment." (*Id.* at p. 777.) The "existence or nonexistence of a bias, interest, or other motive" on the part of a witness ordinarily is relevant to the truthfulness of the witness's testimony (Evid.Code, § 780, subd. (f)), and " '[t]he credibility of an adverse witness may be assailed by proof that he cherishes a feeling of hostility towards the party against whom he is called....' " (3 Witkin, Cal. Evidence 4th (2000) Presentation at Trial, § 277, p. 349, see *People v. Williams* (2008) 43 Cal.4th 584, 634.)

The proffered evidence was key to this case, cited by defense counsel as part of the defense theory of the case. (4RT pp. 607-608.) Anytime a jury is presented with this type of case, a "he said/she said," they must ask themselves why would the victim lie? The proffered evidence as to finances went directly to Nicole's bias and motive to lie, as counsel indicated that Nicole was essentially destitute and saw appellant as a financial opportunity. (3RT p. 418.) Appellant indicated that the deterioration in Nicole's attitude began when they went to the Catalina Cantina for lunch. The couple sitting next to them was recently engaged,

and the girl was showing off her engagement ring. Nicole became upset and told appellant that she wanted a ring. Appellant stated that he wasn't going to buy Nicole a ring because they weren't getting married, and Nicole stormed out of the restaurant. (6RT pp. 886-887.) Nicole stated that she didn't "recall" the incident. (3RT pp. 406-407.)

So who was telling the truth? The proffered evidence as to Nicole's fnances would have tended to support appellant's story, in that it would have explained why she was so upset at appellant telling her that they were not getting married. This, in turn, would have lent additional credence to the defense theory of the case that Nicole's attitude towards appellant deteriorated throughout the day, as she attempted to get appellant to pay more and more attention to her, and appellant paid less and less attention to her.

The proffered evidence as to Nicole's behavior when she drinks was highly probative as well. Nicole's story was that she essentially sat quietly and smiled while appellant was ranting and raving at her throughout the day and evening. (2RT pp. 259-260, 264-265, 291-292, 294-295.) Appellant's witnesses testified as to substantially different behavior by Nicole during the day; essentially she was the one that was loud and obnoxious while appellant kept his cool and did not lose his temper. (5RT pp. 703, 712-713, 715, 717, 719, 721-725, 755, 769-770, 807-808, 6RT pp. 886-888.) The obvious dilemma for the jury was to determine who was telling the truth.

Because of the court's ruling Nicole was bathed in artificial credibility; *there was no evidence that she had ever acted so badly before,* so why should the jury believe that she had acted so badly that day? To put it another way, what motive would Nicole have for going off like a mad woman, when there was no evidence that she had ever done so previously?

The answer was proffered by the defense. Appellant's mother had lunch with Nicole the month before this incident, and would have testified that not only did Nicole drink to excess, but she became short and belligerent. (5RT pp. 690-691.) Another proffered witness would testify that he met Nicole in April, 2009, and observed her drinking habits in a social setting, stating that she drank an excessive amount almost to the point of inebriation. (5RT p. 603.) Both witnesses would tend to support a finding that *Nicole's behavior at Avalon, as argued by the defense, was not an isolated incident but was more the norm for her, and directly contradict Nicole's testimony – or at least seriously call into question – that Nicole sat quietly by while appellant yelled at her and called her names.*

Nicole did acknowledge that she was inebriated the entire day, and had too much to drink (3RT pp. 457-458), but she denied throughout her *testimony that she acted aggressively towards appellant or did anything more than quietly endure appellant's onslaught. As such, the evidence was highly probative.*

### 2. The Probative Value of the Evidence Was Not Outweighed by its Prejudicial Effect.

The evidence would not create undue prejudice. Nicole's credibility was at issue in the case as appellant strongly disputed Nicole's testimony, and painted a completely different picture of what happened at Avalon. Further, appellant offered several witnesses that testified as to both Nicole's behavior as well as to the numerous injuries she suffered that day. The court was concerned about having a "lawsuit within a lawsuit," and thereby confusing the jury. (4RT pp. 607-608.) The proffered testimony would not have confused the issue nor was it misleading; the jury was perfectly capable of giving the evidence the weight it deserves.

### 3. The Probative Value of the Evidence Was Not Outweighed by an Undue Consumption of Time.

It has sometimes been said that evidence that is unduly time-consuming is irrelevant; however, in his treatise on "Evidence," Witkin persuasively argues that consumption of time is not properly a part of ascertaining relevance: "There are occasional expressions to the effect that evidence, though logically relevant (tending to prove a material matter), is so remote or conjectural, i.e., of so slight persuasive value, as to be legally irrelevant. And sometimes the exclusion of evidence for the policy reason of undue prejudice is placed on the ground of irrelevancy. This splitting of the relevancy doctrine into 'logical' and 'legal' phases has been strongly criticized as useless and misleading. The better view seems to be to

consider relevancy a single concept, and to treat all exclusions of logically *relevant evidence as exceptions based on policy; e.g.,* remote or conjectural matter may be relevant but is excluded because it would result in an undue consumption of time. [Citations.]" (1 Witkin, Cal.Evidence (2000), Circumstantial Evidence, § 287, pp. 257-258; *In Re Romeo C.* (1995) 33 Cal.App.4th 1838, 1844.)

Witkin's analysis indicates that the test for undue consumption of time is a balance based on the probative value of the evidence versus how remote or conjectural the evidence is. The proffered evidence was certainly not remote, as it dealt with Nicole's credibility. It is not any more conjectural then the evidence offered by the prosecution in Nicole's direct testimony to prove appellant's *lack* of credibility.

The court ruled that the proffered evidence would result in an undue consumption of time. (4RT p. 607.) In *People v. Minifie* (1996) 13 Cal.4th 1055, 1071, the California Supreme Court ruled that presentation of evidence that goes to the heart of the defense does not represent "undue consumption of time" within the meaning of the rule permitting court to exclude relevant evidence if probative value is substantially outweighed by probability of undue consumption of time.

Similarly in *Andrews v. City and County of San Francisco* (1988) 205 Cal.App.3d 938, 947, the court was concerned that admission of acts of misconduct by the arresting officer would result in time-consuming "mini-

19

trials" over each incident. While appreciating the court's concern, the Court of Appeal did not perceive it as constituting sufficient justification for keeping out all of the misconduct incidents. The officer's truthfulness was the foremost issue in the case. The court's ruling effectively left the officer's testimony untarnished by depriving plaintiff of all available *evidence to rebut it.*

In this case, exclusion of the proffered defense evidence damaged appellant's defense. While the prosecution portrayed Nicole as a quiet, *passive participant in the day's events, with no reason to fabricate a story,* appellant proffered evidence that would challenge the prosecution's theory; namely that Nicole had a powerful financial incentive to remain with appellant and therefore fabricate a story, and had a tendency to drink to excess and become belligerent when she did. This evidence would tend to support appellant's testimony, as well as that of his other witnesses, that appellant was not verbally abusing Nicole throughout the day and did not lose his temper with her. While only two people know what actually happened on appellant's boat that night after everyone had left, this evidence would support appellant's theory of the case. The evidence went to the heart of the defense, as in *Minifie.*

This is not an abuse of discretion case where the appellate court simply looks to see whether the trial court's ruling was arbitrary and capricious. (See *People v. Linkenauger* (1995) 32 Cal.App.4th 1603,

1614.)  The courts have emphasized "This pejorative boilerplate is misleading since it implies that in every case in which a trial court is reversed for an abuse of discretion its action is utterly irrational.  Although irrationality is beyond the legal pale it does not mark the legal boundaries which fence in discretion.  *(City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.)  As the court also pointed out, the scope of discretion always resided in the particular law being applied, and an action that transgresses the confines of the applicable principles of law is outside the scope of discretion and therefore an abuse of discretion.  And, as a more recent case notes, a court's discretion is subject to the limitations of the legal principles governing the subject of its actions and to reversal where no reasonable basis for the action is shown.  *(People v. Jacobs* (2007) 156 Cal.App.4th 728, 738.)  Thus, "a court abuses its discretion when it acts contrary to law." *(In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1016.)  And even in abuse of discretion cases, an appellate court may conduct an independent review where it is in as good of a position as the trial court to decide the issue.  *(Hurtado v. Statewide Home Loan Co.* (1985) 167 Cal.App.3d 1019, 1024-1027.)

The proffered evidence was probative, and admissible under established case law. It was not unduly prejudicial. For these reasons, the trial court's ruling to exclude any examination of Nicole's finances as well

as her drinking habits and behavior, was an abuse of discretion requiring reversal of appellant's convictions.

D. <u>The Constitutional Violations</u>.

Under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, a criminal defendant has an unquestionable right to present relevant exculpatory evidence to the jury. This necessarily includes evidence which calls into doubt the reliability of the evidence on which the state is relying. (*See Davis* v. *Alaska* (1974) 415 U.S. 308 [94 S.Ct. 1105, 39 L.Ed.2d 347].)

In *Davis,* the trial judge was held to have improperly restricted cross-examination of a prosecution witness on his probationary status as a juvenile delinquent. The United States Supreme Court said that the defendant should have been allowed to show the witness' susceptibility to undue pressure and added: "We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." (*Davis v. Alaska, supra,* 415 U.S., at pp. 316-317; see also *Smith v. Illinois* (1968) 390 U.S. 129 [88 S.Ct. 748, 19 L.Ed.2d 956].) It is also necessary to recognize that a denial of this right of cross-examination is not only treated by the courts and legal scholars as a violation of the constitutional right of confrontation but also as a denial of the right, under the laws of evidence, to show the existence of bias, interest or motive to fabricate to attack the credibility of a

witness either by cross-examination or by extrinsic proof. (*People v. James* (1976) 56 Cal.App.3d 876, 886-887.) Under either approach, the trial court's refusal to allow to exclude any examination of Nicole's finances as well as her drinking habits and behavior was prejudicial error.

Criminal defendants have a constitutional right to "have the prosecutor's case encounter and 'survive the crucible of meaningful adversarial testing.'" (*Crane* v. *Kentucky* (1986) 476 U.S. 683, 690-691 [106 S.Ct. 2142, 90 L.Ed.2d 636].)  Where the state interferes with that right, a conviction cannot stand. (*See Davis* v. *Alaska*, *supra,* 415 U.S. 308; *Chambers v. Mississippi* (1973) 410 U.S. 284 [93 S.Ct. 1038, 35 L.Ed.2nd 297]; and *Washington* v. *Texas* (1967) 388 U.S. 14 [87 S.Ct. 1920, 18 L.Ed.2d 1019].)

The right of a criminal defendant to present a defense on his behalf is a fundamental element of due process guaranteed under the Fourteenth Amendment. (*See Webb* v. *Texas* (1972) 409 U.S. 95, 98 [93 S.Ct. 351, 34 L.Ed.2d 330]; and *Washington* v. *Texas*, *supra*, 388 U.S. at 19.)  A state may not mechanistically apply its rules of evidence to defeat a defendant's constitutional right to a fair trial. (*Chambers* v. *Mississippi*, *supra*, 410 U.S. at 302.)

The United States Supreme Court has repeatedly indicated that a State may not use its general rules of evidence or procedure to bar material testimony or pertinent cross-examination which is crucial to a criminal

defendant's defense. (*See Michigan* v. *Lucas* (1991) 500 U.S. 145 [111 S.Ct. 1743, 114 L.Ed.2d 205] (preclusive effect of statutory "notice of evidence" requirement in rape case); *Taylor* v. *Illinois* (1988) 484 U.S. 400 [108 S.Ct. 646, 98 L.Ed.2d 798] (sanction of preclusion for defense violation of discovery rules); *Rock* v. *Arkansas* (1987) 483 U.S. 44 [107 S.Ct. 2704, 97 L.Ed.2d 37] (exclusion of defendant's testimony under state rule disallowing all hypnotically refreshed evidence) *Green* v. *Georgia* (1979) 442 U.S. 95 [99 S.Ct. 2150, 60 L.Ed.2d 738] (state failure to recognize hearsay exception for declaration against penal interest); *Davis* v. *Alaska*, *supra*, 415 U.S. 308 (denial of cross-examination for bias based on state rule making evidence of juvenile proceedings inadmissible in adult court); *Chambers* v. *Mississippi*, *supra*, 410 U.S. 284 (state rule precluding cross-examination of party's own witness); *Washington* v. *Texas*, *supra*, 388 U.S. 14 (state rule precluding accomplice from testifying for defense); and *Delaware* v. *Van Arsdall* (1986) 475 U.S. 673 [106 S.Ct. 1431, 89 L.Ed.2d 674] (exclusion of evidence of benefits given to prosecution witness as violating confrontation clause).)

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." (*Chambers* v. *Mississippi*, *supra*, 410 U.S. at 294.) When a state's hearsay evidence rules, correctly applied, would prevent the defendant from introducing crucial evidence, those rules must bow to the

defendant's right to a fair trial.  So it was in *Chambers*, in which the Mississippi trial court excluded as hearsay the defendant's proffered testimony of three witnesses to the effect that one McDonald had confessed to committing the crime of which the defendant stood accused. (*Id.* at 292.) *The U.S. Supreme Court held that this exclusion, albeit correct under state law, violated the defendant's Fourteenth Amendment due process rights.* (*Id.*, at 302.)

In *Green* v. *Georgia, supra,* 442 U.S. 95, the trial court excluded proposed defense hearsay that a person convicted and sentenced to death for the same murder had stated that he killed the victim alone after sending the defendant on an errand. (*Id.*, at 96.)  The Supreme Court held that this exclusion deprived the defendant of a fair trial.  (*Id.*, at 97.)

The right of a criminal defendant to present a defense on his behalf is a fundamental element of due process guaranteed under the Fourteenth Amendment. (*See Webb* v. *Texas, supra,* 409 U.S. 95, 98; and *Washington* v. *Texas, supra,* 388 U.S. at 19.) For these reasons, the trial court's ruling to exclude any examination of Nicole's finances as well as her drinking habits and behavior, was an abuse of discretion requiring reversal of appellant's convictions.

E. The Error Requires Reversal.

The trial court's exercise of *its discretion to exclude evidence* may be reversed on appeal when a showing is made that the court exercised its

discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Jordan, supra,* 42 Cal.3d at p. 316; see also *People v. Rodrigues, supra,* 8 Cal.4th at p. 1124.) Appellant has shown that a miscarriage of justice occurred, as he was unable to present his evidence directly attacking Nicole's credibility, in contrast to the prosecution's ability to level pot-shots at appellant's credibility, and allow the jury, as the finder of fact, to make the decision as to whose credibility it accepted.

In addition, reversal is required as appellant has shown that errors of a constitutional magnitude occurred. In both *Chambers* v. *Mississippi* and *Green* v. *Georgia*, the High Court reversed without harmless error analysis. (*See Chambers* v. *Mississippi, supra,* 410 U.S. at 303; and *Green* v. *Georgia, supra,* 442 U.S. at 97.) No separate prejudice analysis was necessary, because a finding that the exclusion of evidence violated due process necessarily entailed a finding that the evidence was so critical to the defense that its exclusion deprived the defendant of a fair trial. (*Chambers* v. *Mississippi, supra,* 410 U.S. at 303 ["we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial"]; and *Green* v. *Georgia, supra,* 442 U.S. at 97 ["the exclusion of Pasby's testimony denied petitioner a fair trial on the issue of punishment"].)

Cal.4th 704, 715, italics original, citing *People v. Watson, supra,* 46 Cal.2d at p.837, and *Strickland v. Washington* (1984) 466 U.S. 688, 693-694, 697, 698 [104 S.Ct. 2052, 80 L.Ed.2d 674].)

Nicole's testimony provided the entirety of the evidence that appellant had assaulted her. While the prosecution offered the testimony of a doctor who examined Nicole, appellant offered testimony from neutral witnesses that identified how and where Nicole suffered each of the injuries *complained of. The proffered testimony would tend to show that Nicole had* a powerful financial incentive to remain with appellant and therefore fabricate a story, and had a tendency to drink to excess and become belligerent when she did. *It is reasonably probable that the jury, if it had* heard the proffered testimony, would have favored appellant with their verdict.

*The conviction should therefore be reversed.*



# PRIORITY
## ★ MAIL ★



TRACKED
★ ★ ★
INSURED
★

## FLAT RATE ENVELOPE
ONE RATE ★ ANY WEIGHT™



P S 0 0 0 0 1 0 0 0 0 1 4

EP14F July 2013
OD: 12.5 x 9.5



UNITED STATES
POSTAL SERVICE®

✱ Domestic only.    ✕ For International shipments, the maximum weight is 4 lbs.